**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

MOHAMMAD ZABIHI

     Plaintiff,

v.                                     Civil No. 02-1033 WPJ/RHS (ACE)

NEW MEXICO DEPARTMENT OF HEALTH,
J. ALEX VALDEZ and RAMONA FLORES-LOPEZ,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint, filed April 9, 2004 (**Doc. 38**) and Defendants' Motion for Summary Judgment as to All Counts of the Amended Complaint, filed September 27, 2004 (**Doc. 48**). Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is well-taken on Plaintiff's federal claims, and is denied with regard to Plaintiff's Count IV contract claim, which will be dismissed without prejudice.

### Background

In this employment discrimination case, Mohammad Zabihi alleges that he was not selected for a psychologist position within the Department of Health ("DOH") because of his ethnic background as an Iranian. Counts I and II, brought under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981, respectively, are based on this allegation. In Counts III and IV, Plaintiff alleges that he was supervised by a person, Diane Nunn, that he had been told would not

supervise him and he was thereby constructively discharged.  Counts III and IV assert violations

of equal protection under 42 U.S.C. § 1983, and a contractual claim of bad faith breach of

agreement based on constructive discharge and promissory estoppel. These last two counts were

added to the original complaint by amendment (Doc. 36).

Plaintiff has filed three other employment civil rights lawsuits in this Court: Civil No. 95-

805 LCS, which was terminated with the parties stipulating to dismissal of all claims with

prejudice; Civil No. 98-1282 JP/LFG in which Plaintiff's Title VII and § 1981 claims were

dismissed with prejudice on the basis that Plaintiff had not shown a *prima facie* case of

discrimination based on his race or national origin; Civil No. 00-0013 SC/LFG in which parties

reached a court-approved global settlement in the fall of 2000 for that case as well as several

other cases pending in judicial or administrative contexts.  (Docs. 15 & 17).

Counts III and IV of this, Plaintiff's most recent lawsuit, relate to what Plaintiff contends

is a breach of the 2000 global settlement agreement, based on Defendants' alleged verbal

assurances that he would not have to work under Diane Nunn's supervision.  Defendants' Motion

to Dismiss seeks dismissal of only those two counts.  Plaintiff's response to that motion includes

some concern over whether the Court should entertain the motion without converting it to a

summary judgment because of the two exhibits Defendants attached to the motion.  Defendant's

Exhibit A to the motion to dismiss is an Order by the New Mexico Human Rights Commission

("Commission") Dismissing the Complaint.  In that Order, the Commission noted that Plaintiff

had requested an order of non-determination so that he could instead consolidate the claims which

were before the Commission with claims that were pending in federal district court.  Plaintiff did

not make an appearance to present his case before the Commission, and the Commission

2

subsequently denied Plaintiff's request for an order of non-determination and dismissed his claims. These claims became Counts III and IV of the federal amended complaint.  Defendants' Exhibit B to the Motion to  Dismiss is a copy of the court-approved 2000 global settlement agreement. Plaintiff concedes that the complaint does refer to the settlement agreement, and Plaintiff does not dispute the authenticity of the exhibit.  Exhibit B would therefore be properly considered by the Court on a motion to dismiss.  Jacobsen v. Deseret Book Co., 287 F. 3d 936, 941 (10th Cir. 2002) (Court may consider documents referred to in the complaint if the documents are central to the plaintiffs claim and the parties do not dispute the documents authenticity).  In addition, the Court would be able to take judicial notice of Exhibit B as a court-approved settlement document. See, Randy's Studebaker Sales, Inc. v. Nissan Motor Corp. in U.S.A., 533 F.2d 510, 521 (10th Cir. 1976).  It is not as clear whether the Court would be able to rely on Exhibit A in ruling on Defendant's Motion to Dismiss.  The Commission's Order is not dated, and there is no reference in the amended complaint to the allegations raised in Counts III and IV which were previously before the Commission.

I need not decide whether to rely on either exhibit in ruling on the motion to dismiss, since I find that addressing Defendants' Motion for Summary Judgment is the most efficient approach to handling the pending matters in this case.  The Court may take judicial notice of pleadings which the parties have already filed, e.g., briefing on the motion to dismiss, where relevant or helpful.

Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah)

(citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A

disputed fact is "material" if it might affect the outcome of the suit under the governing law, and

the dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997).  When applying a

summary judgment standard, I must construe the factual record in the light most favorable to the

party opposing summary judgment.  Butler v. City of Prairie City, Kan.,172 F.3d 736, 744 (10th

Cir. 1999).

## I.      Title VII (Count I)[1]

Plaintiff alleges that in the fall of 2001, he was wrongfully denied the position of

Psychologist II, even though he was qualified and had applied for the position.   He contends that

Defendants' refusal to hire him was not the result of a neutral, objective, fair assessment of his

qualifications, but was instead motivated by impermissible and unlawful discrimination based on

his ethnic background.  This claim is directed specifically against Defendant Flores-Lopez, who

Plaintiff contends influenced the decision not to select him for the position because of his ethnic

origin.

## A.     Prima Facie Case

---

[1]  Plaintiff's Title VII claim can be asserted only against the State as Plaintiff's employer.
Lankford v. City of Hobart, 27 F.3d 477 (10th Cir. 1994) (citing Sauers v. Salt Lake Cty., 1 F.3d
1122, 1127 (10th Cir. 1993)).  His § 1981 claim can only be asserted against the individual
Defendants in their individual capacity because of the State's Eleventh Amendment immunity.
See, Ellis v. University of Kansas Med. Center, 163 F.3d 1186, 1196 & n. 13 (10th Cir.1998)
(Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. §§ 1981 or
1983).

In order to establish a *prima facie* case, Plaintiff must demonstrate that: 1) he belongs to a racial minority, 2) he applied and was qualified for a job for which the employer was seeking applicants, 3) he was rejected for the position, and 4) the position remained open and the employer continued to seek applicants from persons of Plaintiff's qualifications. See Notari v. Denver Water Dep't, 971 F.2d 585, 588 (10th Cir. 1992) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Defendants do not contest Plaintiff's *prima facie* case.   The burden then shifts to the employer to demonstrate a legitimate nondiscriminatory reason for its action. If the employer offers a legitimate non-discriminatory reason, the burden shifts back to the Plaintiff to show that the employers reason is mere pretext and unworthy of belief.  Trujillo v. University of Colorado Health Sciences Center, 157 F. 3d 1211, 1215 (10th Cir. 1998) (citing McDonnell Douglas, 411 U. S. at  802-04)).

B.      Legitimate Reasons for Defendants' Conduct

Plaintiff applied for the Psychologist II position with DOH's Long Term Services Division in the Albuquerque Metro Office, but was not selected.  Defendant Flores-Lopez, Director of the Long-Term Care Division, approved the hiring recommendation made by the three interviewers, all of whom knew Plaintiff.[2]  Carol Watts, one of the interviewers, and the person who would supervise the person in this position, had encouraged Plaintiff to apply for the position.  Plaintiff stated in his deposition that he had no evidence that the other two interviewers could be influenced to evaluate his application negatively.  Ex. B at 176-77.  Although Plaintiff's doctorate degree in special education enabled him to be in the top level of candidates, he finished four out of

_____

[2]  The underlying facts presented in this Opinion are undisputed except where noted.  As required in the summary judgment context, I assume factual inferences favorably to Plaintiff.

5

five in terms of rankings.  Defendants present legitimate, nondiscriminatory reasons for not

selecting him in the form of Carol Watts' affidavit and her letter to Defendant Flores-Lopez

recommending two other candidates for the position. (Ex. E).  Ms. Watts observed that Plaintiff

"rambled in his responses," "lacked focus when responding to the questions asked," and "bad

mouthed his current program and its supervisors."  In contrast, Ms. Watts noted that the top two

candidates held Master's degrees in the field of counseling or psychology, were "clear in their

responses; came across as team players, had excellent backgrounds in psychotropic medication,

and had strong and supportive references from their current employers."  Ex. E, ¶¶ 4-5.   In her

written recommendation to Defendant Flores-Lopez, Ms. Watts described in specific detail why

two other individuals came across as the top candidates, including their relevant job histories, job

skills, and her subjective evaluation of their personal strengths.   With this evidence, I find that

Defendants have sufficiently met their burden of production of legitimate, nondiscriminatory

reasons for not selecting Plaintiff for the psychologist position.

C.      Pretext

        Plaintiff can withstand Defendants' motion for summary judgment on his Title VII claim if

he is able to present evidence that a defendant's proffered reason for the employment decision

was pretextual--i.e. unworthy of belief.  Hardy v. S.F. Phosphates Ltd Co., 185 F.3d 1076, 1079-

80 (10th Cir.1999).  Pretext exists when an employer does not honestly represent its reasons for

employment actions that were taken.  Miller vs. Eby Realty Group, 2005 WL 1521235 (10th Cir.

2005).  When a plaintiff seeks to demonstrate that a defendant's proffered non-discriminatory

reason is pretextual, he is required to show that the tendered reason is not the genuine reason for

the employment decision, but rather was a disingenuous or sham reason. English v. Colorado

Dept. of Corrections, 248 F.3d 1002, 1010 (10th Cir. 2001).

Here, Plaintiff attempts to present evidence of pretext through several arguments. He does not dispute that he bad mouthed his current supervisors, yet he considers Ms. Watts' reasons for recommendation the two other candidates as "vague and subjective." Ms. Watts' explanation for her recommendation listed a fair share of objective reasons for her choice, such as job history, familiarity with various psychodiagnostic testing; experience with counseling groups, and knowledge of psychotropic medications. While her recommendation did include some subjective considerations, such as evaluating communication skills and attitude of the candidates, this is entirely acceptable given the type of position to be filled. Pitre v. W. Elec. Co., 843 F.2d 1271-72 (10th Cir.1988) (subjective factors are appropriately considered in selections for upper level positions). A challenge of pretext requires a court to look at the facts as they appeared to the person making the employment decision. Shorter v. ICG Holdings, Inc.,Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1208 (10th Cir. 1999) (manager's perception of employee's performance is relevant, not plaintiff's subjective evaluation of his or her own relative performance). Thus, Plaintiff's belief that he was best qualified for the job is insufficient to create an issue of fact on his claim regarding non-selection for the psychologist position.

Incredibly, Plaintiff includes as evidence of discrimination a *lack* of discussion by the interviewers about his accent during the interview, suggesting that discriminatory intent can somehow be inferred by a lack of discussion about something that is so obvious. However, Plaintiff does not suggest the inverse: that discussion about his accent would *not* have been evidence of discrimination. Discrimination cases require a plaintiff to show evidence, not *lack* of evidence to support illegal motive.

Plaintiff claims he would have been hired for the position were it not for Defendant Flores-Lopez allegedly influencing the interviews, steering the interviewers away from selecting him.  He bases this contention solely on the undisputed fact that at some point in the interview, Chris Heimerl, one of the interviewers, had to leave the interview session.  According to Plaintiff, someone interrupted the interview to tell Mr. Heimerl that "Ramona" [Defendant Flores-Lopez] called him, that he was needed on the phone.  Plaintiff's theory is that Mr. Heimerl's exit from the room is evidence of a plan not to hire Plaintiff for the position, engineered by Defendant Flores-Lopez.  Plaintiff admits that he has no way of knowing what Defendant Flores-Lopez  or Chris Heimerl discussed on the phone, yet contends that it was a "planned thing"  which concerned taking him out of the running for the interview  Ex. 1 at 186:14-25; 187:1-5.   This is nothing more than Plaintiff's own speculation, and not evidence of a dispute of material fact.  <u>Salehpoor v. Shahinpoor</u>, 358 F.3d 782, 789 (10th Cir. 2004), (unsupported conclusory allegations do not create an issue of fact), <u>cert. denied</u>, <u>Salehpoor v. Shahinpoor</u>, 125 S.Ct. 47 (U.S. Oct 04, 2004).

Next, Plaintiff advances a "cat's paw" theory of discrimination, under which a plaintiff need not show a defendant himself or herself acted with racial animus, because defendant was merely a "rubber-stamp" or "cat's paw" for the allegedly biased conduct.  <u>See</u>, <u>Kendrick v. Penske Tranportation Serv., Inc.</u>, 220 F.3d 1220, 1231-32  (10th Cir. 2000) (under certain circumstances, a defendant may be held liable for a subordinate employee's prejudice even if the manager lacked discriminatory intent) (citing <u>Stimpson v. City of Tuscaloosa</u>, 186 F.3d 1328, 1332 (11th Cir.1999)).  Plaintiff offers his own declaration stating that there was a history of "animosity" between himself and Ms. Nunn.  He also described an incident that took place in 1987 when Defendant Nunn came into his office, angry at some staff members and stated that she

"cannot deal with these 'F-----g Mexicans' in this department any more."  Ex. 2 & Attachmt. 1.

Plaintiff asked Nunn what she thought of himself, as a foreigner, to which Nunn replied that she

considered him a "white man," not a Mexican.  Plaintiff warned her that he would request

disciplinary action be taken against her if he ever heard her use that type of language again.

Defendant Nunn's statement does not constitute circumstantial evidence of discrimination because

the statement does not demonstrate prejudice or animosity toward Plaintiff as an Iranian. Plaintiff

does not become a victim of discrimination vicariously through Defendant's alleged prejudice

towards another ethnic group.  Title VII prohibits discrimination against "*any individual* with

respect to compensation. . . or privileges of employment, because of *such individual's* race, color

religion, sex or national origin.  42 U.S.C. 2000e-2(a)(1)."  Further, Nunn's comments are too

attenuated by time (occurring almost *fifteen* years before this lawsuit), and too infrequent to

qualify as evidence sufficient to infer Defendant Nunn's discriminatory animus toward Plaintiff.

See, Trujillo v. Univ. of Col. Health Sci Center, 157 F.3d 1211 (10th Cir. 1998) (a few isolated

incidents of racial enmity are insufficient to survive summary judgment)  (citing Meritor Sav.

Bank v. Vinson, 477 U.S. 57, 67 (1986)); Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526

(10th Cir. 1994) (isolated comments, unrelated to the challenged action, are insufficient to show

discriminatory animus).

    Under Plaintiff's "cat's paw" argument, the interviewers did not select Plaintiff because

they knew that Defendant Nunn would veto their decision based on her animosity towards

Plaintiff.  Even assuming that Defendant Nunn was in a position of authority to veto any decision

over Ms. Watts (who was the Director of the Long Term Services Division which housed the

position), Plaintiff's version of the "cat's paw" turns the doctrine on its head.  The doctrine

applies where a *manager* who lacks discriminatory intent follows the recommendation of a

*subordinate* who does have discriminatory intent, and follows the tainted employment decision

made at a lower level without adequately investigating the situation.  Plaintiff advocates a kind of

reverse "cat's paw," where the subordinate made a decision that would be in line with a

discriminatory motive a manager is known to have.  Under this theory, Plaintiff is hoping not to

have to show evidence of racial animus on the part of Defendant Flores-Lopez, but rather

attribute a discriminatory motive to Defendant Nunn for conduct taken by Flores-Lopez.  I see no

reason to manipulate the "cat's paw" doctrine to fit Plaintiff's theory of the facts, since the claim

fails even under Plaintiff's creative version of the doctrine.  Plaintiff would still need to present

evidence of Nunn's discriminatory motive, evidence that Flores-Lopez somehow influenced the

decision not to select Plaintiff, and finally evidence that this negative influence was directed by

Defendant Nunn's discriminatory motive.  Plaintiff has presented no such evidence, and no

evidence that either Defendant Flores-Lopez or Defendant Nunn did anything which injected an

illegal component into the selection process.

A plaintiff can show pretext by presenting evidence of "such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable factfinder could rationally find them unworthy of credence and hence

infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti,

Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  Plaintiff argues that he need not always present

additional evidence in order to show pretext.  Plaintiff is correct. The *prima facie* case may "itself

cast sufficient doubt on a defendant's proffered nondiscriminatory reason to satisfy [a plaintiff's]

burden of showing pretext." English, 248 F.3d at 1009.  However, this does not mean that the

mere showing of a *prima facie* case satisfies a plaintiff's ultimate burden of discrimination.

Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1242 (10th Cir. 1991) (ultimate burden of proving

discrimination remains with the plaintiff at all times).  A plaintiff is still required to present

evidence, whether in the *prima facie* case or otherwise, which infers discriminatory intent.  See,

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000) ("because a *prima facie*

case *and* sufficient evidence to reject the employer's explanation may permit a finding of liability,

the Court of Appeals erred in proceeding from the premise that a plaintiff must  always introduce

additional, independent evidence of discrimination") (emphasis added).  While Plaintiff has

sufficiently presented a *prima facie* case, the evidence of record in this case does not show that

the reasons proffered by Defendants for not selecting Plaintiff for the psychologist position in the

fall of 2001 are weak, implausible, inconsistent, incoherent, or contradictory as to support a

reasonable inference that Defendants did not act for those reasons.  Defendants are entitled to

summary judgment on Plaintiff's Title VII claim.

## II.    Section 1981 claim (Count II)

Plaintiff's § 1981 claim is based on the same allegations which form his Title VII claim,

i.e., the denial of the Psychologist II position in the fall of 2001.  For purposes of this opinion, the

same analysis applies to Plaintiff's § 1981 claim and to his Title VII claim.  Randle v. City of

Aurora, 69 F.3d 441, 450 (10th Cir. 1995) (elements of a plaintiff's case are the same, based on

the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought

under §§ 1981, 1983 or Title VII) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, n.1

(1993); Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1103 (10th Cir.1998) (elements are

identical for § 1981 & Title VII actions); Aramburu v. Boeing Co., 112 F.3d 1398, 1403 n. 3

(10th Cir.1997) (court applies the same standards and burdens to plaintiff's claims regardless of whether they arise under Title VII or § 1981). Thus, Plaintiff's § 1981 claim fails for essentially the same reasons that his Title VII claim fails. Consequently, summary judgment will be granted in favor of Defendants on Plaintiff's § 1981 claim.

## III.    Section 1983, Equal Protection  (Count III)

Plaintiff claims that he was constructively discharged, and that the discharge constitutes a violation of his equal protection rights under the Fourteenth Amendment. Plaintiff's § 1983 claim is an interesting hybrid: it is premised on Plaintiff's assertion that the state has violated his constitutional and contractual rights because Defendants assigned Defendant Nunn as his supervisor, in violation of a "binding oral agreement between [Defendants] and Plaintiff." Amended Compl., ¶ 42. Plaintiff relies on a constructive discharge theory which is actually part of a Title VII theory.   Notwithstanding how Plaintiff has recast the claim, the Court ventures a guess that Plaintiff is attempting to sidestep Title VII's administrative exhaustion requirements. See, Boyer v. Cordant Techs., Inc., 316 F.3d 1137, 1138 (10th Cir. 2003) (timely pursuit of administrative redress is a prerequisite to filing suit under Title VII). Also, Plaintiff's references to Defendants' contract violations is nothing more than a state law contract claim.

Plaintiff's § 1983 claim fails on either of two grounds: (1) Plaintiff has not shown that he was constructively discharged and (2) he does not present any evidence that his equal protection rights were violated.

## A.    § 1983 - Constructive Discharge

A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to

resign.  Pennsylvania State Police v. Suders, 124 S. Ct. 2342, 2351  (2004); Sprague v. Thorn

Americas, Inc., 129 F.3d 1355, 1367 (10th Cir. 1997). Working conditions must be so sever that

the plaintiff simply had no choice but to quit. See, Yearous v. Niobrara County Mem'l Hosp., 128

F.3d 1351, 1357 (10th Cir. 1997).   Working conditions  that are "difficult and unpleasant" are

not sufficient to support a constructive discharge claim.  Id.  In contrast, a plaintiff who

voluntarily resigns cannot claim that he or she was constructively discharged.

 Plaintiff contends he was constructively discharged because Defendants breached their

agreement not to assign Defendant Nunn as Plaintiff's supervisor.  Thus, the threshold issue is

whether Plaintiff was constructively discharged.[3]  There is no dispute that Plaintiff and Defendant

Nunn had a history of personal conflict. What is in dispute is whether this conflict stemmed from

racial or ethnic animus on Ms. Nunn's part.  The Court finds that it did not because Plaintiff has

not presented any evidence to support his position that Defendant Nunn possessed racial or ethnic

animus toward him.

 Some recitation of Plaintiff's employment history at DOH is appropriate in the context of

his § 1983 "constructive discharge" claim.  Plaintiff worked at the Los Lunas State Hospital until

until he was subject to a Reduction in Force ("RIF") in 1997.  After he was let go as part of this

RIF, Plaintiff began submitting applications for employment with various state entities and when

he did not receive jobs for which he felt qualified, he filed multiple administrative and judicial

claims in state and federal forums in New Mexico.[4]  The multiple state agencies involved in these

---

[3]  The question of whether Defendants breached any agreement is the essence of Plaintiff's
contract claim in Count IV.

[4]  In a 2000 deposition, Plaintiff stated that he has brought suit over every job he has
applied for and did not get.  Ex. K at 57:5-7.  This lawsuit involves his first application for a job

claims with Plaintiff, including the New Mexico Department of Health, entered into the global settlement in year 2000 which the Court referred to previously.  This settlement resolved all claims filed or that could have been filed.  The settlement language recites that in consideration for this release and agreement, Dr. Zabihi would be employed with the Los Lunas Community Program, a new program in a secure, locked Belen facility for persons adjudicated or otherwise determined to be dangerous and who were developmentally disabled.  Dr. Zabihi signed this agreement in June, 2000.  Plaintiff admits that the agreement included no promise about who would supervise him in his new position.  Ex. B (Pltff's Depo.) at 16:18-22.  After reading the agreement, Plaintiff made no suggestions to change anything  Ex. B:11:7-8.

Even though Plaintiff states in his amended complaint that "in return for Plaintiff's willingness to settle the case, [Defendant Matt McCue] assured Plaintiff that he would not be required to work under Nunn," Amended Compl., ¶ 17,  Plaintiff admitted in his deposition that, before  signing the settlement agreement, no one told him he would never be supervised by Diane Nunn. Ex. B at 18: 7-11.  Plaintiff recalls asking who his supervisor would be, and being told to report to Matt McCue.  Ex. B at 11:8-14.   He also stated that after he signed the agreement he made it clear to Defendant McCue that he would not have accepted the settlement otherwise, even though he had signed it.  Ex. B at 16:11-17.

Plaintiff offers irrelevant legal argument in a weak attempt to rehabilitate his admissions that prior to signing the agreement, no promises were made concerning who his supervisor would be.  For example, while Plaintiff acknowledges his statement that he was given no assurances about supervisors, he also notes that Defendants left out an "express reservation of rights" to

_____

since the 2000 deposition.

assign him Nunn as his supervisor at any time and at their option, somehow implying that this omission precluded Defendants from assigning him Ms. Nunn as his supervisor. Resp. at 4. Plaintiff also maintains that his claim relating to the breach of promise not to assign Nunn as his supervisor is not precluded because of "subsequent" assurances by Defendant McCue allegedly made to that effect, without any legal or factual basis to support this statement. Resp. at 4.

Early in 2001, DOH reexamined whether it made sense for Plaintiff to be supervised by Matt McCue, who was at that time Director of the Los Lunas Community Program. Diane Nunn supervised the programs in her area which had residential components. Ramona Flores-Lopez, the Director of the Long Term Services Division and supervisor of Mr. McCue, thought it made more sense for all of the residential programs to be under Diane Nunn. Ex. C (Flores-Lopez Affidavit, ¶ 5). Plaintiff objected to having Diane Nunn as his supervisor as shown in notes kept by Defendant Nunn of various interactions between her and the Plaintiff during the first half of 2001. Ex. F (Nunn Affidavit & Attachmts.). In August of 2001, Plaintiff was formally notified that Diane Nunn would replace Matt McCue as his supervisor. Exhibit B at 28:18-19. Plaintiff objected to working under Ms. Nunn's supervision.

Events came to a head on August 24, 2001, when Plaintiff became hostile at a meeting and angrily refused to accept the direction and supervision of Ms. Nunn in front of other individuals present. As a result of his behavior at this meeting, Plaintiff was given a notice of contemplated disciplinary action consisting of a 10-day suspension. After Plaintiff gave what was determined to be an unsatisfactory response to the proposed action, the 10-day suspension was upheld, and was in effect from December 3, 2001 until December 17, 2001. In the final written notice informing Plaintiff that the discipline would be imposed, Defendant McCue reviewed the events of the

15

August 24th meeting as well as Plaintiff's prior conduct which justified the disciplinary action.

The notice stated that since March 2001, Plaintiff had engaged in a "calculated and deliberate

pattern of refusal to accept supervisory direction and . . . acts of insubordination."  Ex. H.

Plaintiff was described as being "intensely angry and verbally abusive" at the August 24th meeting

and as having made an "unfinished statement that sounded like "whore" in referring to Defendant

Nunn.  The notice also described other conduct by Plaintiff which was considered insubordination,

such as Plaintiff's refusal to discuss his supervisor's job performance expectations or sign off on

his Employee Performance Appraisal and Development form ("PAD").  During one of the times in

which Plaintiff refused to sign the PAD, he stated that he "should be fired" for his refusal to

participate in the normal PAD development process.  Ex. H, at 2.

   After the suspension period in December of 2001, Matt McCue placed Plaintiff in a

position where he would receive the same salary, but would not be supervised directly by Diane

Nunn.  Ms. Nunn, however, would be supervising Plaintiff's new supervisor.  This arrangement

was still unacceptable to Plaintiff, who quit coming to work at that point.  Ex. B at 29:7-19.

Plaintiff filed a Charge of Discrimination, stating that "I constructively discharged myself on

5/17/02." Ex.G.

   To support his constructive discharge claim, Plaintiff fashions arguments attacking

Defendant Nunn's qualifications for the job, and DOH's decision to organize the residential

programs under one supervisor instead of keeping them separate.   These arguments do not help

Plaintiff's constructive discharge claim.  The issue is strictly whether Plaintiff has demonstrated

that objectively, he had "no other choice but to quit." Jones v. Barnhart 349 F.3d 1260, 1266)

(10th Cir. 2003).   The record strongly suggests the existence of conflict between Plaintiff and

Defendant Nunn, but there is insufficient evidence to support Plaintiff's contention that the conflict involved racial or ethnic animus shown by Defendant Nunn.  There is, however, evidence that Plaintiff's objections and challenges to Defendant Nunn's supervision of him was a recurring event, based on the notes Ms. Nunn kept from February through  April of 2001.  Ex. F (notes). These observations seem to be consistent with the types of behavior described in Mr. McCue's final disciplinary notice to Plaintiff.  For example, Ms. Nunn stated that Plaintiff made "insulting and derogatory remarks" to her, including a reference to her as Matt McCue's "whore."  Ex. F (Nunn Affidavit, ¶ 5).   The notes also state that in April, 2001, Plaintiff told her and Defendant McCue to "Go ahead and fire me, I am being insubordinate. . . ." Ex. F (notes).

        Summing up the evidence in the record, Plaintiff has not shown that his work situation was intolerable to the point where he was forced to quit.  To put it mildly, the evidence suggests that Plaintiff himself was a management problem.  The Court does not take into account Plaintiff's peculiar discord with Defendant Nunn, but how a reasonable person in Plaintiff's situation would react.  Sanchez v. Denver Public Schools, 164 F.3d 527, 534 (10th Cir. 1998) (conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant).  There is no evidence that DOH's decision to organize all the residential facilities under one person's supervision made Plaintiff's job intolerable.  Further, Plaintiff's attacks on Ms. Nunn's ability to supervise do not present the Court with any evidence to show that Ms. Nunn's alleged incompetence forced Plaintiff to quit his job.  Finally, there is nothing in the record concerning the conduct of Ms. Nunn, or any of the Defendants, to reasonably justify Plaintiff's belief that his work atmosphere was intolerable.  Plaintiff voluntary resigned, and therefore was not constructively discharged.

B.      § 1983 Equal Protection - Class of One

Plaintiff clarifies that his claim in Count III is based on the "class of one" doctrine

recognized by the Supreme Court in Village of Willowbrook v. Olec, 528 U.S. 562, 564 (2000).

Resp. at 4.[5]   This type of equal protection claim is brought by a "class of one, where the plaintiff

alleges that he has been intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment." Mimics, Inc. vs. Village of AngelFire,

394 F.3d 836 (10th Cir. 2004) (citing Willowbrook, 528 U.S. at 564).  To succeed on such an

equal protection claim, Plaintiff must prove that he was "singled out for persecution due to some

animosity."

Courts have recognized that it is "always possible for persons aggrieved by government

action to allege, and almost always possible to produce evidence, that they were treated

differently from others, with regard to everything from zoning to licensing to speeding to tax

evaluation."  Thus, the concept of a "class of one" equal protection claim should be "carefully

circumscribed" to prevent it from becoming a catch-all "federal cause of action for review of

almost every executive and administrative decision made by state actors." Jennings vs. City of

Stillwater, 383 F.3d 1199, 1210-1211 (10th Cir. 2004).   Plaintiff's reliance on this theory

illustrates exactly why courts use this concept sparingly.

Count III does not specify the conduct which forms the basis for the claim, but, as

mentioned previously, it is framed in the context of constructive discharge relating to the

assignment of Diane Nunn as Plaintiff's supervisor.  However, whether addressed in that context

---

[5] Equal Protection under the "class of one" doctrine affords protection to an individual
injured by intentional or purposeful discrimination without identification of a class.  Bartell v.
Aurora Pub. Sch., 263 F.3d 1143, 1148-49 (10th Cir. 2001).

or in the context of Plaintiff's non-selection for the psychologist position, Plaintiff does not satisfy any portion of the elements for this claim.  Plaintiff is unable to point to any kind of mandate or policy which states that the supervisor for other residential programs should not be the supervisor for his program.  Ex. B at 31:9-14.  Defendants have offered legitimate reasons for placing Plaintiff's facility -- along with the other residential facilities -- under the supervision of Defendant Nunn.  Even if this decision was unwise, it does not bolster Plaintiff's claim.  Tx. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981) (An employer's decision does not have to be wise, prudent or logical; it merely has to be explained clearly and applied indiscriminately); McKnight v. Kimberly Clark Corp. et al,  149 F.3d 1125 (10th Cir. 1998) (An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment).  Plaintiff also fails to offer any evidence that any other individual was "similarly situated," because that individual does not exist in the fact scenario he presents, nor does he offer any evidence that Defendants' actions in restructuring the program were motivated by animosity or spite against Plaintiff.  Summary judgment will be granted to Defendants on Plaintiff's § 1983 Equal Protection claim as well.

**IV.   Contract (Count IV)**

This last claim is grounded in state contract law.  Plaintiff alleges that Defendants breached an "oral agreement" between themselves and Plaintiff that Plaintiff would not be required to work with Defendant Nunn.  As I have dismissed all of Plaintiff's federal claims on summary judgment, I decline to exercise supplemental jurisdiction over the state claim, pursuant to 28 U.S.C. § 1367(c)(3).  Thatcher Enterprises v. Cache Cty. Corp., 902 F.2d 1472 (10th Cir. 1990) (when federal claim dismissed before trial, even though not insubstantial in the jurisdictional

sense, the state law claim will generally be dismissed as well).

## Conclusion

Plaintiff has not demonstrated that there is an issue of material fact which creates an inference that any of the Defendants's actions were pretextual for an illegal or discriminatory motive, on any of his federal claims.  These federal claims are dismissed with prejudice. The Court also finds that Plaintiff was not constructively discharged, and declines to exercise supplemental jurisdiction under § 1367(c)(3) over Plaintiff's remaining state law claim, which will be dismissed without prejudice.

In light of my disposition of Plaintiff's claims based on Defendants' summary judgment motion, Defendants' Motion to Dismiss Plaintiff's Counts III and IV is denied as moot.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment as to All Counts of the Amended Complaint **(Doc. 48)** is hereby GRANTED IN PART with regard to Plaintiff's federal claims brought under Title VII, § 1981 and § 1983 Equal Protection, which are hereby DISMISSED WITH PREJUDICE**;**

**IT IS FURTHER ORDERED** that Plaintiff's contractual claim of bad faith breach of agreement based on constructive discharge and promissory estoppel alleged in Count IV is DISMISSED WITHOUT PREJUDICE for reasons described above;

**IT IS FINALLY ORDERED** that Defendants' Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint **(Doc. 38)** is hereby DENIED AS MOOT.

**JUDGMENT shall issue in favor of Defendants.**

_____
UNITED STATES DISTRICT JUDGE